# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| FAIRSEA, LLC | : | |
|     Plaintiff, | : | |
| v. | : | CIVIL ACTION |
| | : | |
| PHILADELPHIA INDEMNITY | | NO. 12-0595 |
| INSURANCE COMPANY, | : | |
|     Defendant(s). | : | |

## MEMORANDUM

**Tucker, J.**                                                                                                   **December ___, 2012**

      Fairsea, LLC has sued Philadelphia Indemnity Insurance Company for breach of contract ("Count I") and the statutory tort of bad faith insurance in accordance with 42 Pa. C.S.A. § 8371 ("Count II"). Jurisdiction is based on diversity of citizenship, 28 U.S.C. § 1332. Presently before the Court is Philadelphia Indemnity's motion to dismiss Count II of Fairsea's complaint (Doc. 6), and all responses and reply briefs thereto. For the following reasons, this Court grants Defendant's motion for dismissal of Count II.

## I.    Factual and Procedural Background

      Accepting as true all of the allegations in the complaint and reasonable inferences that can be drawn therefrom, the facts of this case are as follows. Plaintiff Fairsea, LLC ("Plaintiff" or "Fairsea") is a company organized under the laws of Rhode Island with members residing in both Rhode Island and Massachusetts. (Compl. at ¶¶ 1 – 5.) Defendant Philadelphia Indemnity Insurance Company ("Defendant" or "Philadelphia Indemnity") is a corporation organized under

the laws of Pennsylvania with a principal place of business in Pennsylvania. (Compl. at ¶ 6.) The parties became acquainted when Plaintiff purchased a package insurance policy (hereinafter, "the Policy") from Defendant to protect its financial interests in the physical assets and income generated by its property, the Marina Lighthouse marina located on Lake Champlain in Rouses Point, New York. (Compl. at ¶¶ 11 – 12.) The Policy provided a wide array of insurance coverage for three buildings on the property premises, including first-party property insurance protecting the physical assets of the Marina Lighthouse marina against damage or destruction from peril or wind. (Compl. at ¶ 22.)

On April 23, 2011 ("the First Loss") and again on May 23, 2011 ("the Second Loss"), the marina buildings and docks, together with certain business personal property, were damaged by high winds on Lake Champlain, with significant damage being done during both events. (Compl. at ¶¶ 23, 25.) Plaintiff reported the losses separately to Defendant and sought coverage under the policy for both incidents. (Compl. at ¶¶ 24, 26.) While Philadelphia Indemnity issued two advances for each incident, (Compl. at ¶ 48), it later denied coverage of Fairsea's losses, alleging that the damage to Fairsea's property was excluded losses by virtue of the policy's concurrent causation language and water exclusion. (Compl. at ¶ 61.) Fairsea avers that Philadelphia Indemnity's denial of coverage lacks a reasonable basis given the substantial proof that the cause of loss was due to wind. (Compl. at ¶ 89.) As a result, Fairsea filed the present action, asserting that Philadelphia Indemnity has not only breached its contract but has also acted tortuously by denying coverage. Philadelphia Indemnity moved to dismiss Fairsea's statutory tort claim under Pennsylvania law, alleging that the instant dispute is governed by New York law and, therefore, such claim must fail outright. (*See* Def. Br.)

## II. Standard of Review

Philadelphia Indemnity moves to dismiss Count II of Fairsea's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). In considering a 12(b)(6) motion to dismiss for failure to state a claim, the Court "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." *Fowler v. UPMC*, 578 F.3d 203, 210-11 (3d Cir. 2009), citing *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). The Court "must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211, quoting *Iqbal*, 556 U.S. at 679. To be "plausible," a claimant's factual allegations must "permit the court to infer more than the mere possibility of misconduct." *Id.* That is, "a complaint must do more than allege the plaintiff's entitlement to relief," it "has to 'show' such an entitlement with its facts." *Fowler*, 578 F.3d at 211. If the court can only infer the mere possibility of misconduct, the complaint must be dismissed because it has alleged, but has failed to show, that the pleader is entitled to relief. *Id.*

When deciding a 12(b)(6) motion, the Court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon those documents. *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010). If the court considers other matters outside of the pleading, the motion is to be treated as one for summary judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 12(b)(6). The district court, prior to converting a Rule 12(b)(6) motion to a motion for summary judgment, must provide the parties with "an opportunity to submit materials admissible in a summary judgment proceeding." *Ford Motor Co. v. Summit Motor Prods., Inc.*, 930 F.2d 277, 284 (3d. Cir. 1991).

### III. Discussion

As a preliminary matter, this Court will decline to convert defendant's Rule 12(b)(6) motion to dismiss into a Rule 56 motion for summary judgment. Philadelphia Indemnity's brief in support of its motion to dismiss relies on evidence extrinsic to the complaint. To the extent these exhibits are not attached to Fairsea's complaint, matters of public record, or undisputedly authentic documents related to the complaint, the court will not consider them in deciding the present dispute.[1]

The central issue before the Court is Philadelphia Indemnity's motion to dismiss Fairsea's statutory tort claim under Pennsylvania law for bad faith denial of insurance coverage. Philadelphia Indemnity asserts that Pennsylvania's choice of law rules requires application of New York law, which fails to recognize an independent cause of action for bad faith claims. (*See* Def. Br., at 11-12.) Applying New York law, Philadelphia Indemnity argues that Fairsea's bad faith claim pursuant to 42 Pa. C.S.A. § 8371 must fail. Plaintiff, on the other hand, maintains that Pennsylvania law applies to the present dispute and that therefore Count II of its complaint should remain. (*See* Pl. Br., at 12-14.) In order for the Court to rule on the motion to dismiss, it is necessary to decide the choice of law issue.

#### A. Pennsylvania's Choice of Law Analysis

A federal court sitting in a diversity action "must apply the choice of law rules of the forum state to determine what substantive law will govern." *Huber v. Taylor*, 469 F.3d 67, 73 (3d Cir. 2006) (quoting *Klaxon Company v. Stentor Electric Manufacturing Company*, 313 U.S.

---

1 The court will consider the following documentary exhibits attached to Defendant's brief in support of its motion to dismiss: (1) Plaintiff's complaint; (2) the relevant insurance policy, which was attached to Plaintiff's complaint; and (3) the corporate and/or entity registrations for Fairsea, LLC.

487, 496 (1941). Under Pennsylvania choice of law rules, a court must first determine whether there is an actual conflict between the competing states. *Hammersmith v. TIG Ins. Co.*, 480 F.3d 220, 231 (3d Cir. 2007). To determine whether an "actual conflict" exists, the court must examine the substance of the potentially applicable laws to identify "whether these states would actually treat this issue any differently." *Id.* at 230. If the application of the proposed laws would not lead to different results, the court need only apply the forum law. *Id.* However, where the competing laws produce different results, the court must characterize the type of conflict. *Id.* To determine the type of conflict, the court must perform an "interest analysis" of the policies of the interested states and then characterize the relationship between the policies and the factual predicate of the action as a true conflict, a false conflict, or an unprovided for situation. *Id.*

A true conflict exists "only if both jurisdictions' interests would be impaired by the application of the other's laws." *Id.* at 230. In the event of a true conflict, the court must apply the law of the state with the greatest interest, based upon an analysis of which state has the most significant contacts with the particular issue. *Id.* at 231; *see also Garcia v. Plaza Oldsmobile LTD.*, 421 F.3d 216, 220 (3d Cir. 2005). A false conflict exists "if only one jurisdiction's governmental interest would be impaired by the application of the other jurisdiction's laws." *Hammersmith.* 480 F.3d at 229. In the event of a false conflict, the court applies the law of the only interested state. *Id.* Finally, an "unprovided for" situation arises when no jurisdiction's interest would be impaired if its laws were not applied. *Id.* at n.9. An unprovided for situation triggers the law of the place where the wrong was committed. *Id.*

### B. New York law applies to Plaintiff's bad-faith claim

#### a. A conflict exists between New York and Pennsylvania law.

Both parties acknowledge that a conflict between the laws of the competing states exists. (See Def. Br., at 11-13; Pl. Br., at 9-10.)[2] Pennsylvania's bad faith statute permits a party to recover punitive damages, attorney's fees, and interest against an insurer for the denial of a claim in bad faith. See 42 Pa. C.S.A. § 8371. New York, on the other hand, fails to recognize an independent cause of action for bad faith denial of insurance coverage. *See Polidore v. Chubb Corp.*, 354 F. Supp. 2d 349, 352 (S.D.N.Y. 2005) ("Plaintiff's claim for bad-faith conduct in handling insurance claims is not legally cognizable under New York law."); *Cont'l Info. Sys. Corp. v. Fed. Ins. Co.*, No. 02-4168, 2003 U.S. Dist. LEXIS 682, at *9 (S.D.N.Y. Jan. 17, 2003) ("New York does not recognize a claim for bad faith denial of insurance coverage, whether based in tort or in contract."). Under New York law, the bad faith denial of insurance coverage is merely a breach of the underlying contract. *See Sea Carriers Corp. v. Empire Programs, Inc.*, 488 F. Supp. 2d 375, 380 (S.D.N.Y. 2007); *see also New York Univ. v. Continental Ins. Co.*, 662 N.E.2d 763, 770 (N.Y. 1995).

Pennsylvania and New York also have different standards for evaluating claims for bad faith denial of insurance coverage. *See General Star National Ins. Co. v. Liberty Mut. Ins. Co.*, 960 F.2d 377, 385 (3d Cir. 1992) (recognizing the different standards of proof); *Kilmer v. Conn. Indem. Co.*, 189 F. Supp. 2d 237, 244 (M.D. Pa. 2002) ("Because New York and Pennsylvania have different standards for evaluating claims of an insurer's bad faith, it is clear that no false

---

2 Defendant correctly points out that courts sitting in the Eastern District of Pennsylvania have also found that a true conflict exists between the bad faith laws of Pennsylvania and New York. *See Hanover Ins. Co. v. Ryan*, 619 F. Supp. 2d 127, 136 (E.D. Pa. 2007); *Koken v. Lexington Ins. Co.*, No. 04-2539, 2006 WL 5377234, at *12 (E.D. Pa. 2006); *Celebre v. Windsor-Mount Joy Mut. Ins. Co.*, No. 93-5212, 1994 WL 13840, at *1 (E.D. Pa. Jan. 14, 1994).

conflict exists.") To make out a case of bad faith, Pennsylvania law requires a lower showing of proof than New York law. *Kilmer*, 189 F. Supp. 2d at 244. "Under Pennsylvania law . . . the insured must show, by clear and convincing evidence, that the insurer did not have a reasonable basis for denying benefits under the policy." *Id.* Under New York law, "bad faith requires an extraordinary showing of a disingenuous or dishonest failure to carry out a contract." *Id.*, quoting *Gordon v. Nationwide Ins. Co.*, 285 N.E.2d 849 (NY 1972).[3]

### b. A "true" conflict exists between New York and Pennsylvania law.

Because a conflict between Pennsylvania and New York law exists, the Court must determine whether such conflict is "true, false, or unprovided for." The crux of the parties' dispute is whether New York's refusal to recognize an independent cause of action for bad faith denial of insurance coverage represents a neutral position with regard to application of its law and thereby creates a "false conflict" between the states. Philadelphia Indemnity contends that New York's decision not to recognize an independent claim for bad faith is no "historical accident" but a policy choice, and that permitting Plaintiff to assert such a claim under Pennsylvania law impairs the interest of New York. (See Def. Br., at 13-14.) Fairsea, on the

---

3 The defendant also points out that New York and Pennsylvania law differ with regard to the imposition of punitive damages. (See Def. Br., at 11-12.) To recover punitive damages under Pennsylvania law, the plaintiff must first show that the defendant did not have a reasonable basis for denying benefits under the policy and that defendant knew or recklessly disregarded its lack of reasonable basis in denying the claim. *See Northwestern Mut. Life Ins. Co. v. Babayan,* 430 F.3d 121, 137 (3d Cir. 2005). Upon meeting the bad faith standard under § 8371, a plaintiff may then obtain punitive damages upon a showing that the defendant engaged in "outrageous conduct, which is defined as an act which, in addition to creating 'actual damages, also imports insult outrage, and is committed with a view to oppress or is done in contempt of plaintiff's rights." *Klinger v. State Farm Mut. Auto Ins. Co.*, 115 F.3d 230, 235 (3d Cir. 1997) (quoting *Delahanty v. First Pa. Bank, N.A.*, 464 A.2d 1243 (Pa. Super. 1983). New York, on the other hand, provides for the additional recovery only in those limited circumstances where the defendant's conduct is actionable as an independent tort, the tortious conduct is egregious in nature, and the tortious conduct is directed to the plaintiff and at the public generally.

other hand, contends that a false conflict exists because "[t]his is clearly a situation where New York law has taken no stand" and, therefore, requires application of the forum state's law. (See Pl. Br., at 10-11.) Fairsea further contends that because it can meet the pleading requirements for a bad faith claim under New York law, "no violence is done to New York's interests by application of §8371 to this case." (See Pl. Br., at 11.)

This Court is not persuaded by Plaintiff's position and finds a true conflict between Pennsylvania and New York law. New York's refusal to recognize an independent claim for bad faith conduct by insurers does not suggest a disinterest in the application of its law, especially where both the insurer and the insured conducts business in its state. In *Koken v. Lexington Ins. Co.*, 2006 WL 5377234, at *12 (E.D. Pa. 2006), the court characterized New York's denial of an independent cause of action as a clear policy choice which achieved several purposes, including the following:

> (1) Preventing insureds from obtaining extra-contractual damages against insurers for allegations that mirror a breach of contract claim; (2) minimizing the cost of insurance for New York residents by eliminating the "passing-on" of the costs of bad faith insurance judgments, including the assessment of punitive damages; and (3) encouraging insurers to do business in New York by eliminating the fear of punitive damage awards for claim-handling that falls short of independently tortious and morally reprehensible conduct aimed at plaintiff and at the general public. *See e.g., Northwestern Mutual Life Ins. Co. v. Wender*, 940 F. Supp. 62, 66 (S.D.N.Y. 1996) (New York's laws governing bad faith claims are primarily meant to regulate the conduct of insurance companies doing business in New York).[4]

---

[4] Plaintiff relies on the Third Circuit case, *3039 B St. Assocs. V. Lexington Ins. Co.*, 740 F. Supp. 2d 671 (3d Cir. 2010) in asserting that New York maintains a neutral position with regard to the application of its law in the instant dispute. (See Pl. Br., at 10.) In *3039 B St. Assocs.*, the court classified New York's failure to recognize an independent bad faith claim as being neutral with regard to the application of its law and, accordingly, applied Pennsylvania law to the plaintiff's bad faith claim. 740 F. Supp. 2d at 676-677. However, in a footnote, the court explained, "[d]eclining to provide bad faith protection to its insured may in fact represent a type of policy choice . . ."

The aforementioned rationale embodies "New York's interest in choosing not to regulate certain types of bad faith conduct by insurers who do business in New York in an effort to both encourage insurers to offer coverage to New York insureds at a reasonable rate and to promote flexibility in coverage determinations without fear of punitive damage judgments." *Id.* Thus, permitting Plaintiff to assert an independent cause of action for bad faith conduct against Defendant under Pennsylvania law would directly impair New York's interest. Furthermore, precluding Plaintiff from bringing a separate cause of action for bad faith denial of insurance coverage against Defendant under New York law directly impairs Pennsylvania's interest in deterring this type of conduct by Pennsylvania insurance companies, like Philadelphia Indemnity. *See General Star Nat'l Ins. Co. v. Liberty Mutual Ins. Co.*, 960 F.2d 377, 379 (3d Cir. 1992) (recognizing Pennsylvania's primary public policy to protect insured residents by regulating the conduct of insurers who do business in Pennsylvania).

**a. New York has the most significant interest in applying its law.**

Having determined that a true conflict exists, this Court must apply the law of the state with the most significant contacts or relationship with the particular issue. In making such a determination, Pennsylvania choice of law rules requires an analysis of factors outlined in Restatement (Second) of Conflicts. In determining what law to apply to bad faith claims such as the one brought by Fairsea, district courts in the Third Circuit have considered a hybrid of tort and contract principles identified in § 145, § 188 and § 193 of the Restatement. *See, e.g., Koken*, 2006 WL 5377234, at *13 (looking to § 145, § 188 and § 193); *Kilmer*, 189 F. Supp. 2d at 244-

9

245 (considering factors outlined in § 193); *Williams Crane & Rigging, Inc. v. Northbrook Property & Casualty Ins. Co.*, No. 93-4266, 1996 WL 134800, at 4 (E.D. Pa. March 26, 1996) (evaluating contacts identified in § 145); *Celebre v. Windsor-Mount Joy Mut. Ins. Co.*, No. 93-5212, 1994 WL 13840, at *3 (E.D. Pa. Jan. 14, 1994) (looking to factors identified in § 188 and § 193). These factors include, *inter alia*: the principal place location of the insured risk during the term of the policy; the place of contracting; the place of negotiation of the contract; the place of performance; the location of the subject matter of the contract; the place where the injury occurred; the place where the conduct causing the injury occurred; and the domicile, residence, nationality, place of incorporation, and place of business of the parties. *See* Restatement (Second) of Conflict of Laws § 145(2) (listing factors to be considered in determining law governing issue in tort); § 188 (listing factors to be considered in contract dispute in absence of effective choice of law by parties; § 193 (identifying what contacts should be given weight in cases of fire or casualty insurance contracts). "This analysis requires more than a "mere counting of contacts," but rather an assessment of the contacts on a "qualitative scale according to their relation to the policies and interests underlying the [particular] issue." *Hammersmith*, 480 F.3d at 231.

Plaintiff contends that since the tortious conduct constituting bad faith occurred at Philadelphia Indemnity's home office department in Pennsylvania, Pennsylvania law should apply. (See Pl. Br., at 12-13). Plaintiff further contends that Pennsylvania law should apply because, in awarding punitive damages for bad faith conduct, New York law applies the rule of *lex loci delicit* – the law of the place where the tort occurred. (See Pl. Br., at 12.) Meanwhile,

Defendant contends that since the loss occurred in New York, the insured property is located in New York, the insured and insurer conduct business in New York, and the adjustment of the claim, including communications regarding the adjustment of the claim, took place in New York, New York law should apply. In analyzing qualitatively the parties' contacts with each state, this Court finds that New York has the most interest in applying its law.

While there is no doubt that Pennsylvania has an interest in regulating Pennsylvania insurance companies such as Philadelphia Indemnity, such interest is diminished when the insured is not a Pennsylvania resident. *Gen. Star Nat'l Ins. Co.*, 960 F.2d 377, 379 (3d. Cir. 1992); *see also 3039 B St. Assocs. V. Lexington Ins. Co.*, 740 F. Supp. 2d 671, 677 at n.9 (3d Cir. 2010) (citing to *Gen. Star Nat'l Ins. Co.* as finding "that Pennsylvania had little interest in the primary policy because the insured was not a resident of Pennsylvania."); *Thomson*, 1992 U.S. Dist, LEXIS 1980, at *10 ("Pennsylvania has a great interest in protecting its residents from possible misconduct of insurance carriers operating within its borders."). Because Fairsea is not a Pennsylvania resident, the significance of Philadelphia Indemnity being a Pennsylvania company is overshadowed by the myriad of contacts that more clearly trigger the application of New York law. Furthermore, Fairsea's attempt to evaluate the success of its claim under New York law is unavailing. The present issue before the Court is not whether Fairsea can make out a bad faith claim under New York law, but whether Fairsea's actual bad faith claim asserted under Pennsylvania law is recognized under New York law.

Accepting as true Fairsea's claims that it is not a New York resident and the tortious conduct causing injury arose in Pennsylvania, this Court still finds in favor of Defendant. It is

undisputed that both parties conduct business in New York, the insured property is located in New York, the damage to the insured property occurred in New York, and the adjustment of the claim took place in New York. Given New York's policy interest in minimizing the cost of insurance for New York insureds and encouraging insurers to do business in New York, this Court finds both the qualitative and quantitative weight of the contacts mandates the application of New York law to plaintiff's claim.

I.     **Conclusion**

Based on the foregoing analysis, this court finds that New York has the most significant relationship to the case and the greatest interest in resolving this dispute. Accordingly, Philadelphia Indemnity's motion to dismiss Count II of Fairsea's complaint is granted. However, the Court will grant Fairsea leave to amend its complaint, within fifteen days of this court's order, to allege any additional New York claims related to the bad faith denial of insurance coverage under which it might wish to proceed. An appropriate order follows.